UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE HUNTER,

      **Plaintiff,**               **CIVIL ACTION NO. 14-CV-10539**

**vs.**                                **DISTRICT JUDGE BERNARD A. FRIEDMAN**

                                        **MAGISTRATE JUDGE MONA K. MAJZOUB**

LLOYD RAPELJE, et al.,

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Jermaine Hunter, currently a prisoner at the Michigan Reformatory in Ionia, Michigan, filed this action under 42 U.S.C. §§ 1983, 1985, and 1986 against Defendants Rapelje (Warden at the Saginaw Correctional Facility (SRF)), Winn (Deputy Warden at SRF), Funstan (Investigator at SRF), Zummer and Culberson (Resident Unit Managers at SRF), Shaw (Assistant Resident Unit Manager at SRF), George and Novak (Assistant Resident Unit Supervisors at SRF), Foy and Budchek (Captains at SRF), Turner and Bond (Lieutenants at SRF), Wiley (a Sergeant at SRF), Rievert, Davidson, and Pratt (SRF Correctional Officers), Bell (the SRF Librarian), Enos (the SRF Assistant Librarian), Spaulding (the SRF Food Service Director), and Oksas (an SRF Food Service Supervisor).   (Docket no. 1 at 3-4.)   In his Complaint, Plaintiff alleges that Defendants, through individual acts and in concert, created unconstitutional conditions of confinement at SRF and then retaliated against him for filing a series of grievances related to those conditions.   (*See id.*)   Plaintiff has since been transferred from SRF, but he seeks $200,000.00 in compensatory damages and $300,000.00 in punitive damages against Defendants, jointly and

1

severally.   (*Id.* at 35.)   He also seeks a declaratory judgment in his favor.   (*Id.*)

Before the Court is Defendants' Motion to Dismiss.[1]  (Docket no. 42.)   Plaintiff filed a Response.   (Docket no. 45.)   All pretrial matters have been referred to the undersigned for consideration.   (Docket no. 35.)   The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.      Recommendation

The undersigned recommends granting in part and denying in part Defendants' Motion to Dismiss [42].   The Court should dismiss Plaintiff's claims against Defendant Funston. Defendants' Motion should be denied with regard to the remaining defendants and claims.

## II.     Report

### A.      Facts

Plaintiff was transferred to SRF on June 23, 2011.   (Docket no. 1 ¶ 14.)   After arrival, Plaintiff learned that SRF has a policy whereby prisoners are given one roll of toilet paper each week.   (*Id.* ¶¶ 14, 22.)   Plaintiff alleges that inmates are not provided with any cleaning tools or solutions, so he had to use his toilet paper to clean up the "dry fecal matter and urine" on the toilet. (*Id.* ¶ 16.)   Plaintiff states that he had "dysentery"[2] following meals and that after he ran out of

---

[1] Defendants George, Pratt, Oksas, and Shaw have not been served in this matter.   Thus, they have not joined in Defendants' Motion.   Also pending before the Court, however, are Plaintiff's Motion to Extend Summons and for Alternate Service with regard to these four Defendants (docket no. 46) and Plaintiff's Motion Requesting an Order that the Identity of Plaintiff be Immediately Shielded from Public Disclosure (docket no. 47).   The undersigned will address Plaintiff's outstanding Motions in a separate Opinion and Order.

[2] Plaintiff uses the term *dysentery*, "1: a disease characterized by severe diarrhea with passage of mucus and blood and usually caused by infection[;] 2: diarrhea."   *Dysentery Definition*, MERRIAM-WEBSTER.COM, http://www.merriam- webster.com/medical/dysentery (last visited Mar. 6, 2015).   Plaintiff has provided no information to suggest that he had mucus or blood in his stool; therefore, the undersigned assumes, for purposes of this Motion, that Plaintiff's

toilet paper on June 27, 2011, Defendant Rievert gave him 1/6 of a roll of toilet paper and told him not to come back for any more.   (*Id.* ¶¶ 17-19.)   Plaintiff alleges that when he ran out of that toilet paper, he was forced to use one of his face cloths to clean himself and the toilet.   (*Id.* ¶ 20.) Plaintiff alleges that the one-roll-per-week policy was implemented by Defendant Rapelje.   (*Id.* ¶ 22.)   Plaintiff contends that on January 11, 2011, before his arrival at SRF, Defendant Rapelje announced at a Warden's Forum Meeting that supplies would be limited based on budget cuts. (*Id.* ¶ 25.)   He notes, though, that the "inadequate toilet paper" issue had been brought to Warden Rapelje's attention "numerous times since 2006."   (*Id.* ¶ 24.)

Plaintiff alleges that he spoke to Defendant George about the problem and noted that he could not have regular bowel movements if he were limited to one roll of toilet paper each week. (*Id.* ¶ 23.)   According to Plaintiff, however, Defendant George told him that he had heard of the grievances that Plaintiff had filed at other prisons and that Plaintiff should not do the same at SRF because he would not be able to change things.   (*Id.* ¶ 27.)   Nevertheless, on June 27, 2011, Plaintiff filed a grievance against Warden Rapelje and his administration alleging unconstitutional conditions of confinement.   (*Id.* ¶ 28.)   Plaintiff's grievance was rejected at Step I, and he was instructed to bring up the issue at the Warden's forum.   (*Id.* ¶ 29.)   Plaintiff's subsequent Step II and Step III appeals were denied.   (*Id.* ¶¶ 30-33.)

Plaintiff alleges that on July 6, 2011, he approached Defendant George and another officer requesting a certificate of account activity form, and he was "subjected to a tirade of abusive language, yelling, and other abusive conduct from Defendant George," so he filed a grievance. (*Id.* ¶ 37.)   The next day, Plaintiff filed an additional grievance against Defendant George for

---

allegations relate to the latter definition.

3

failing to generate Plaintiff's Parole Eligibility Report for an upcoming hearing.   (*Id.* ¶ 38.) Plaintiff alleges that as a result of the grievance, Defendant George did complete the report, but he also completed a Compass Assessment Narrative, which "erroneously report[ed] that [Plaintiff] had a prior history of violent activity as an adult . . . and that Plaintiff has attitude problems," which Plaintiff believes resulted in a denial of his parole.   (*Id.* ¶¶ 39-40.)   Plaintiff further alleges that on August 4, 2011, he took a civil rights complaint to Defendant George's office to be sent out for filing, but Defendant George took the mail into his office, read it, and refused to mail it; thus, Plaintiff filed another grievance against Defendant George, arguing that Defendant George refused to send out his mail in retaliation for Plaintiff's earlier grievances.   (*Id.* ¶¶ 41-43.)   And on August 17, 2011, Plaintiff filed another grievance against Defendant George, this time for refusing to process Plaintiff's quartermaster request to replace a missing shirt; again, Plaintiff argued that Defendant' George's conduct was retaliatory.   (*Id.* ¶ 44.)

That same day, Plaintiff sent a "Staff Corruption Complaint" to Defendants Rapelje and Winn regarding Defendant George.   (*Id.* ¶ 45.)   In the corruption complaint, he alleged that on July 29, 2011, Defendant Rievert and Officer Redeemer[3] shook down his cell room area and that when he approached the officer's desk regarding the shakedown, he was told "You'll be seeing a lot of us since you want to file grievances around here."   (*Id.* ¶ 46-48.)   Plaintiff further alleges that he was then told by another prisoner that Defendant Rievert "called me to the desk and told me to tell you [(Plaintiff)] that if you continue to file grievances, he's going to start ransacking cells, taking property, and he's going to tell the prisoner's you're responsible."   (*Id.* ¶ 52.)   Plaintiff claims that he then began fearing for his safety in the prison.   (*Id.* ¶ 55.)

---

3  Plaintiff later states that this second officer was Defendant Davidson.   (*See* docket no. 1 ¶¶ 58, 59, 79.)

Plaintiff spoke with a friend outside of prison, who then called the prison and ultimately relayed Plaintiff's concerns to Defendant Culberson.   (*Id.* ¶ 56.)   Defendant Culberson met with Plaintiff, and Plaintiff stated that he believed the shakedown was "malicious and retaliatory."   (*Id.* ¶ 57.)   Plaintiff alleges that later that day, Defendant Rievert called Plaintiff a "snitch" in front of all of the other prisoners in his housing unit.   (*Id.* ¶ 60.)   Plaintiff contends that he learned later that day that Defendant Rievert had been telling other prisoners that Plaintiff was a snitch and that Defendant Rievert had offered a $100.00 reward to another prisoner if he stabbed Plaintiff.   (*Id.* ¶ 65-66.)   Plaintiff states that word then began to spread that other prisoners should not associate with Plaintiff "because it's a $100.00 hit on him for snitching."   (*Id.* ¶ 67.)   Plaintiff claims that he lost friends and became paranoid that someone would stab him.   (*Id.* ¶¶ 68-77.)

On August 9, Plaintiff informed Defendant Winn that Defendant Rievert had labeled him a snitch and put a hit out on him.   (*Id.* ¶ 78.)   Plaintiff filed a grievance the same day, and on August 10, 2011, Plaintiff was contacted by Defendant Funstan, who cautioned him that pursuing the grievance would only make things worse and would not resolve anything.   (*Id.* ¶ 79-80.)   Plaintiff alleges that Defendant Funstan asked Plaintiff to let him handle the grievance but that doing so would have eliminated the record of any misconduct by Defendants Rievert and Davidson.   (*Id.* ¶ 81.)   Plaintiff asserts that on August 17, 2011, he informed Defendants Rapelje and Funston of the ongoing retaliation, but they took no action to address the problem.   (*Id.* ¶ 84-85.)

On August 18, 2011, Plaintiff was sent by Defendant Rievert to meet with Defendant Wiley, who informed Plaintiff the he was being charged with a major misconduct violation for "possessing forged documents, and forgery relating to a postage stamp being tampered with on

outgoing mail." (*Id.* ¶ 91.) Defendant Wiley told Plaintiff that he could plead guilty to the charge and take a "one day loss of privileges" or take his chances at a hearing and receive the maximum number of days if found guilty; Plaintiff accepted the plea "under duress of being found guilty anyway." (*Id.* ¶ 93.) Plaintiff alleges that when Defendant Rievert found out that he only received a one-day loss of privileges, he said "You are not going to get off so lightly" and called Defendant Wiley. (*Id.* ¶ 94.) The next day, Plaintiff received another copy of his misconduct report, but the "0" days remaining on his sanction had been "altered" to read as a "4." (*Id.* ¶ 95.) Plaintiff complained to Defendant Shaw, who recommended that Plaintiff serve the four-day sanction to avoid any more retaliation. (*Id.* ¶ 96.) Plaintiff wrote to Defendant Rapalje but received no response, so on August 22, 2011, he filed a grievance against Defendant Wiley and other unknown staff members who altered the misconduct report. (*Id.* ¶ 97-98.)

On August 26, 2011, Plaintiff was in the prison library when he saw Defendants Rievert and Davidson discussing something with Defendant Zummer and Officer Griffus. (*Id.* ¶ 86.) Plaintiff alleges that the four officers then "aggressively confronted him" and tried to intimidate him into signing off on his grievances. (*Id.* ¶¶ 86-87.) Plaintiff then filed a grievance against Defendants Zummer, Rievert, and Davidson for intimidating conduct and because Zummer "violated the grievance policy by allowing the parties in controversy to engage in the investigation." (*Id.* ¶ 88.)

On September 22, 2011, Plaintiff was called to Defendant Foy's office, where he alleges Foy attempted to get him to sign off on the grievance filed against Defendant Zummer. (*Id.* ¶ 89.) Plaintiff contends that Defendant Foy threatened to have Plaintiff transferred to a northern facility (further away from his family) if Plaintiff did not sign off on the grievance. (*Id.*) Plaintiff then

filed a grievance against Defendant Foy.   (*Id.* ¶ 90.)

In the meantime, however, on September 21, 2011, the prison was locked down at 9:05 a.m.   (*Id.* ¶100.)   Plaintiff alleges that the siren woke him up and that he had to use the restroom immediately, but his cell was locked, so he could not go.   (*Id.* ¶ 101.)   At 10:50 a.m., Defendant Pratt announced that "count is clear, but the unit is closed. Bathroom use only."   (*Id.* ¶ 104.) Plaintiff alleges that the other prisoners were allowed to use the restroom, but when Defendant Pratt saw his nametag, he said "No! You're on lockdown," and he would not let Plaintiff out.   (*Id.* ¶ 106.)   Plaintiff alleges that he ultimately urinated on himself and was forced to stand in his soaked clothes for approximately 25 minutes.   (*Id.* ¶ 107.)   Plaintiff further alleges that Defendant Pratt explicitly disregarded orders from Defendant Rapelje that officers were to use "common sense" with regard to restroom use during lockdown.   (*Id.* ¶ 108.)   Plaintiff filed a grievance against Defendant Pratt on September 23, 2011.   (*Id.* ¶ 110.)

Also during this time, from approximately September 6, 2011, through September 21, 2011, Plaintiff complained to Defendant Enos that several MDOC policies were missing from the law library, which he needed to work on his earlier grievances.   (*Id.* ¶ 112.)   And he complained to Defenant Bell with regard to Defendant Enos.   (*Id.* ¶ 114.)   On September 21, Plaintiff requested that his library call-out day be changed from Friday to Saturday; he was removed from the Friday list but not added to the Saturday list.   (*Id.* ¶ 113.)   Despite several kites and complaints, Plaintiff's library time was never reinstated.   And on October 13, 2011, Plaintiff started working in Food Services four days a week, which removed him from his weekday library call-outs.   (*Id.* ¶ 117.)   Plaintiff attempted to contact Defendants Enos and Bell and ultimately spoke with Defendant Bell on October 27, 2011.   (*Id.* ¶¶ 118-21.)   Plaintiff was given a one-time

library call-out on October 28, 2011 and again on November 7, 2011.   (*Id.* ¶¶ 122-23.)   Plaintiff complained that the MDOC policies he needed were still missing, and the next day, Defendant Enos called Defendant Rievert, who shook down Plaintiff's cell looking for the missing policies. (*Id.* ¶ 124-28.)   Plaintiff alleges that Defendant Enos then told him that she knew where the policies were the whole time.   (*Id.* ¶ 130.)   On November 8, 2011, Plaintiff filed a grievance against Defendants Bell and Enos, alleging that they refused to provide him with six hours of law library time in violation of MDOC policy and that Defendant Enos ordered a pretextual shakedown.   (*Id.* ¶ 111, 132.)   On November 9, 2011, Bell and Enos allegedly told Plaintiff that his "problems are coming from those grievances."   (*Id.* ¶ 131.)

In late October or early November, approximately two weeks after starting his Food Service assignment, Plaintiff was promoted to a Baker position.   (*Id.* ¶ 136.)   His pay rate, however, was not increased as required under MDOC policy.   (*Id.*)   Plaintiff was told by another prisoner that he overheard Defendant Oksas state that Plaintiff was being punished because he was a "disruptive 'pain in the ass'" and that he "has a problem with authority."   (*Id.* ¶ 139.)   Plaintiff attempted to resolve the issue with Defendants Oksas and Spaulding, but when he was unable to do so, he filed a grievance against them.   (*Id.* ¶ 140-41.)   Soon thereafter, Plaintiff's pay grade was increased, but on December 8, 2011, Plaintiff filed another grievance against Defendants Oksas and Spaulding, alleging that they fabricated a negative work evaluation report on him in retaliation for filing his initial grievance.   (*Id.* ¶ 142-43.)

On December 27, 2011, Plaintiff met with a prison psychologist who "determined that Plaintiff appeared to be having a traumatic response to events [that occurred at the prison]."   (*Id.* ¶ 146.)   The next day, Plaintiff was in the law library when Defendant Bell informed Plaintiff that

he would not receive any more law library time because he was "doing other prisoners' law work." (*Id.* ¶ 148.)   Plaintiff alleges that he showed Defendant Bell his court-related filings, but Defendant Bell told him that he was not getting any additional library time.   (*Id.* ¶ 149.)   Plaintiff further alleges that Defendant Bell told him "that's all you're going to get joker, file another grievance," to which Plaintiff responded he would file a grievance alleging denial of access to the courts; Defendant Bell responded by saying "prove it asshole."   (*Id.* ¶ 150.)   When Plaintiff arrived back at his cell, he found Officer Stevens conducting a shakedown on orders from Defendant Budchek at the request of Defendant Bell.   (*Id.* ¶¶ 151-54.)   Plaintiff complained to Defendant Budchek and ultimately filed a grievance.   (*Id.* ¶¶ 155-57.)

On December 29, 2011, Plaintiff was cited for a major rules infraction, which alleged that Plaintiff left the library without permission on December 28, 2011.   (*Id.* ¶ 158.)   With the investigation ongoing, Plaintiff was forced out of the law library early on January 4, 2012, which resulted in Plaintiff filing another grievance against Defendant Bell for retaliation.   (*Id.* ¶ 163.)

On January 5, 2012, Plaintiff met with Defendant Winn to discuss some of the ongoing issues, including another search of his cell area on December 28, 2011, by Defendant Budchek. According to Plaintiff, Defendant Winn informed him that no one would be fired over the grievances but Defendants were going to "ride Plaintiff out to another facility."   Plaintiff informed Defendant Winn that any such conduct would be a retaliatory transfer, but Defendant Winn only responded by saying that if Plaintiff signed off on the grievances, he would have some say as to where it was transferred and that Defendants would make sure he was transferred south. (*Id.* ¶¶ 164-69.)

Plaintiff alleges that on January 10, 2012, after a visit with the prison psychologist,

Defendants Novak and Culberson also attempted to get him to sign off on the grievances.   (*Id.* ¶¶ 170-75.)   When he refused to do so, Defendant Culberson said, "okay, were (sic) still going to transfer you."   (*Id.* ¶ 175.)   Plaintiff further alleges that immediately following this conversation, Defendant Novak, at the behest of Defendant Winn and with Defendant Winn's signature, initiated his transfer.   (*Id.* ¶176-77.)   Plaintiff was then sent to see Defendant Budchek for a hearing with regard to his major misconduct charge, at which time Defendant Budchek presided over the hearing.   (*Id.* ¶¶178-80.)   Plaintiff complained that Defendant Budchek was the subject of his grievances, so it was improper for him to preside over the hearing, but Defendant Bond, who was also present at the hearing, stated "send him back, he doesn't want to cooperate."   (*Id.* ¶ 182.) Plaintiff was sent back to his cell and was ultimately convicted of the charge; he received a 10-day sanction.   (*Id.* ¶¶ 183-84.)   Plaintiff's appeals were denied by Defendant Winn, at which time he filed a grievance against Defendants Budchek and Bond.   (*Id.* ¶¶ 185-86.)

On January 12, 2012, Plaintiff was transferred to another prison, which Plaintiff alleges was further away from his family and "as a result Plaintiff lost alot (sic) of ordinary visitation he would have had."   (*Id.* ¶ 187.)   Additionally, Plaintiff alleges that this transfer resulted in the loss of his "high paying institutional assignment as a 'Baker' which was a significant institutional pay grade at approximately \$55.00 a month."   (*Id.* ¶ 188.)   On January 12, 2012, Plaintiff filed a grievance against Defendants Rapelje, Winn, Funston, Turner, Culberson, Novak, and Shaw for failure to protect him from retaliatory conduct and for conspiracy.   (*Id.* ¶ 189.)   Plaintiff then filed his instant Complaint.   (Docket no. 1.)

### B.     Governing Law

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

sufficiency of a complaint.   The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."   *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); Inge v. Rock Fin. Corp., 281 F.3d 613, 619 (6th Cir. 2002).   To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."   *Id.* (internal quotations and citations omitted).   "Only a complaint that states a plausible claim for relief survives a motion to dismiss."   *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief."   *Id.* at 679.

### C.    Analysis

Through their Motion to Dismiss, Defendants Bell, Bond, Budchek, Culberson, Davidson,

Enos, Foy, Funston, Novak, Rapelje, Rievert, Spaulding, Turner, Wiley, Winn, and Zummer argue that (1) Plaintiff has failed to state a claim under the Eighth Amendment because receiving only one roll of toilet paper per week does not rise to the level of a Constitutional violation; (2) Plaintiff's claims against Defendants Rapelje, Winn, Funston, and Zummer fail because Plaintiff has not alleged any personal involvement by these Defendants; (3) Plaintiff's transfer to another prison is not an adverse action sufficient to support a retaliation claim; (4) Plaintiff's misconduct-violation claims fail because he was found guilty of the alleged misconduct; and (5) Defendants' are protected by qualified immunity.[4]  (Docket no. 42.)

### 1.    Plaintiff's Eighth Amendment Claims

The Eighth Amendment bars states from imposing punishments that are cruel and unusual, including those that involve the unnecessary and wanton infliction of pain.  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'"  *Id.* (*citing Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).  But "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).   Where a prisoner claims that his claims are based on conditions of confinement, the prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).   That is,

---

[4] Defendants also argue that Plaintiff's allegations do not support his Fourteenth Amendment Due Process claim or his denial-of-access-to-the-courts claim.  (Docket no. 42 at 26-31.)  As Plaintiff asserts, though, Defendants misconstrue Plaintiff's allegations.  (*See* docket no. 45 at 6-8.)  Plaintiff does not assert that his due-process rights or his right of access to the courts were infringed; instead, Plaintiff argues that Defendants' conduct amounts to retaliation for his filing of grievances.  (*Id.*)  Plaintiff notes his due-process violations and his inability to access the law library as factual examples of this retaliatory conduct.

the plaintiff must show that he faced a sufficiently serious risk to his health or safety and that the defendant acted with "'deliberate indifference' to [his] health or safety." *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying the deliberate-indifference standard to conditions of confinement claims)). "Fundamentally, the concept underlying the Eighth Amendment is nothing less than the dignity of humankind." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 564, 568 (6th Cir. 2013) (internal quotations, omissions, and modifications omitted).

To support a claim of deliberate indifference under the Eight Amendment, a Plaintiff must satisfy two components: an objective component, and a subjective component. *Id.* (*citing Harrison v. Ash*, 538 F.3d 510, 518 (6th Cir. 2008)). "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant . . . acted with a sufficiently culpable state of mind.'" *Quigley v. Toung Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

In a conditions-of-confinement context, the objective component of the deliberate-indifference inquiry is met when the plaintiff can show that the condition of confinement amounts to an "extreme deprivation." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir.2004). In such cases, "courts look to the evidence presented regarding the duration of exposure and totality of conditions contributing to the alleged deprivation." *Eidam v. Bailey*, No. 10-34, 2011 WL 3269625, *3 (W.D. Mich. July 29, 2011) (citing *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir.2006)).

Defendants assert that Plaintiff's Eighth Amendment Claims fail because limiting inmates to one roll of toilet paper per week is not an "excessive" depravation. (Docket no. 42 at 17-18.)

13

In support of this position, Defendants rely on an opinion from the Eastern District of Missouri, *Cosby v. Purkett*, 782 F.Supp. 1324 (E.D. Mo 1992), and an unpublished Sixth Circuit decision, *Richmond v. Settles*, 450 Fed. Appx. 448 (6th Cir. Dec. 2, 2011).   (Docket no. 42 at 18.)

In *Cosby*, the court found that providing a prisoner with only one roll of toilet paper per week was not unconstitutional.   *Cosby*, 782 F.Supp. at 1329.   But the court made this determination while noting that "additional rolls are available upon request. [And p]laintiffs fail to allege that their requests for additional toilet paper were ignored."  *Id.*   The matter and hand is distinguishable.   Although Defendants contend that Plaintiff "received additional smaller quantities [of toilet paper] on request" (docket no. 42 at 18), Plaintiff alleges that he was provided with only 1/6 of an additional roll of toilet paper during his first week at SRF and he was told not to come back for any more (docket no. 1 ¶¶ 17-19).   Thus, the persuasive value of *Cosby* is de minimis.   And in *Richmond*, the plaintiff was placed on "Behavioral Management" and was not provided with toilet paper, soap, toothpaste, a toothbrush, running water, or the ability to shower for six days.   *Richmond*, 450 Fed. Appx. at 455.   The court found that depravation of such items, for a "'brief span of time …, i.e. only six days'" was not actionable conduct.   *Id.* (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb 1, 2000)) (omission in original).   Again, the matter at hand is distinguishable as Plaintiff alleges an ongoing, systematic depravation of toilet paper.

In support of his claims, Plaintiff draws the Court's attention to *Reynolds v. Warzak*, No. 09-144, 2011 WL 4005477 (W.D. Mich. Sept. 8, 2011) (holding that "the repeated deprivation of toilet paper implicates the Eighth Amendment"); *Carver v. Knox County, Tenn.*, 753 F.Supp. 1370 (E.D. Tenn. 1989) (holding that "[t]he failure to regularly provide prisoners with . . . toilet articles including soap, razors, combs, toothpaste, toilet paper, access to a mirror, and sanitary napkins for

female prisoners constitutes a denial of personal hygiene and sanitary living conditions"), aff'd in part and rev'd in part on other grounds by *Carver v. Knox County, Tenn.*, 887 F.2d 1287 (6th Cir. (1989); *Williams v. ICC Committee*, 812 F.Supp. 1029 (N.D. Cal. 1992) (holding that "the deliberate denial of toiletpaper (sic) and soap for any extended period [is] be more significant than a de minimus intrusion" without elaborating on the length of the deprivation).

Plaintiff alleges that due to his digestive needs, he cannot properly clean himself with only one roll of toilet paper per week.  He claims that he has been told not to request additional toilet paper, so he has to use his face cloth to clean himself.  Plaintiff further alleges that the lack of toilet paper has forced him to hold his bowel movements, which causes "severe stomach pains, constipation, bloating and cramps."  (Docket no. 1 ¶ 30.)  Considering the totality of the circumstances, Plaintiff's allegations may give rise to an actionable claim.  Thus, construing Plaintiff's Complaint in the light most favorable to him and accepting his factual allegations as true, the undersigned finds that Plaintiff's allegations are sufficient to raise his right to relief above the speculative level.[5]  Defendants' Motion to dismiss should be denied with regard to Plaintiff's Eighth Amendment claims.

### 2.    Personal Involvement of Defendants Rapelje, Winn, Funston, and Zummer

It is a well-established principle that Section 1983 liability cannot be based on a mere failure to act or on a theory of respondeat superior.  *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-07 (6th Cir. 1998).  Rather, a supervisor must have "'either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must

---

[5] Defendants do not argue that Plaintiff has failed to meet the subjective component of a deliberate-indifference claim.  Instead, as discussed herein, Defendants argue that Plaintiff's Complaint does not allege personal involvement by specific defendants.

allege that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"   *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (*quoting Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).   Thus, to state a plausible claim for relief, a plaintiff must allege that each defendant was personally involved in, or otherwise condoned, encouraged, or knowingly acquiesced in the alleged misconduct.   *Id.*   Defendants Rapelje, Winn, Funston, and Zummer argue that Plaintiff "has not made any factual allegations showing these Defendants' personal involvement in the complained-of acts, and merely states that [they] failed to properly supervise and correct the actions of their subordinate officers and employees."   (Docket no. 42 at 22-23.)

### i.   Defendant Rapelje

In his Complaint, Plaintiff alleges that Defendant Rapelje implemented the one-roll toilet-paper policy at SRF for financial reasons.   (Docket no. 1 ¶ 22.)   Plaintiff contends that inmates repeatedly addressed the policy at the Warden's Forum, but Defendant Rapelje did not make any changes.   (*Id.* ¶¶ 22-29.)   Plaintiff further alleges that the policy was enforced by the SRF staff at the direction of Defendant Rapelje.   (*Id.* ¶ 22, 25.)

Plaintiff acknowledges that in general, a supervisor cannot be held liable under Section 1983 for a mere failure to act.   (Docket no. 45 at 4-5.)   He asserts, however, that "'the rule does not apply to cases challenging ongoing conditions of confinement'" because "'[t]he State's obligation to 'provide' these basic needs would have no meaning if a prison official could fail to provide them and then evade liability simply by pleading that he "failed to act."'"   (*Id.* (quoting *Allen v. Caruso*, 2009 WL 3063315, *4 (E.D. Mich. 2009) (quoting *Spencer v. Bouchard*, 449 F.3d 721, 730-31 (6th Cir. 2006) (internal quotations omitted))).)   Plaintiff claims that Defendant

16

Rapelje knew of the substantial risk caused by the one-roll toilet-paper policy and that he disregarded that risk.   Because Plaintiff's Complaint alleges more than a mere failure to act by Defendant Rapelje, Defendants' Motion should be denied in this regard.

### ii.   Defendant Winn

Plaintiff alleges that Defendant Winn met with him on January 5, 2012, at which time he told Plaintiff that he was going to "ride Plaintiff out to another facility."   Plaintiff alleges that Defendant Winn asked Plaintiff to sign off on some grievances if Plaintiff wanted to have some say in where he was transferred.   Plaintiff further alleges that when he refused, Defendant Winn initiated and signed off on his transfer.   (Docket no. 1 ¶¶ 168, 169, 174, 176, 177.)   Thus, Plaintiff's Complaint does contain factual allegations that Defendant Winn was directly involved in the alleged retaliatory transfer.   Therefore, Defendants' Motion should be denied with regard to Defendant Winn.

### iii.   Defendant Funston

In his Complaint, Plaintiff alleges that on August 17, 2011, he informed Defendant Funston about ongoing misconduct by Defendants Reivert and Davidson, but Defendant Funston took no action.   (*Id.* ¶ 84-85.)   He also alleges that he filed a grievance against Defendant Funston on January 12 for failure to protect him from retaliatory conduct and for conspiracy.   (*Id.* ¶ 189.)   None of Plaintiff's allegations assert that Defendant Funston implicitly authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct of the other officers or that he was actively involved in any of the retaliation.   Therefore, Defendants' Motion should be granted with regard to Defendant Funston.

### iv.   Defendant Zummer

17

In his Complaint, Plaintiff alleges that on August 26, 2011, Defendants Zummer, Reivert, and Davidson, along with Officer Griffus, attempted to get Plaintiff to sign off on a grievance that he had filed against Defendants Reivert and Davidson.   (*Id.* ¶¶ 86-87.)   He alleges that Defendant Zummer "aggressively confronted him about the grievance" and that while Reivert, Davidson, and Griffus "stood silently staring at Plaintiff for indimidation purposes," Defendant Zummer told Plaintiff "its resolved! You are going to sign off."   (*Id.*)   Drawing all reasonable inferences in Plaintiff's favor and accepting these allegations as true, Plaintiff's allegations against Defendant Zummer do not allege liability merely on a theory of supervisory liability; Plaintiff alleges that Defendant Zummer was actively involved in the alleged retaliation.   Therefore, Defendants' Motion should be denied with regard to Defendant Zummer.

### 3.     Plaintiff's Retaliatory Transfer Claim and his Misconduct-Violation Claims

Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct.   *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999).   A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."   *Id.* (citations omitted).   "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. . . . If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail."   *Id.* at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)).

Plaintiff alleges that Defendants systematically retaliated against him for filing grievances, a protected activity, by (1) filing false charges against him, (2) altering a disciplinary record to impose additional punishment, (3) taking away his library time, (4) failing to initially raise his pay to the appropriate rate for a Baker; and (5) transferring him to another prison.   (*See* docket nos. 1 and 45.)   Defendants do not address the general retaliation claim, but instead focus on Plaintiff's claims for retaliatory transfer and false misconduct violations.   (Docket no. 42 at 24-25.)

With regard to the retaliatory transfer, Defendants correctly assert that the Sixth Circuit has repeatedly held that prison transfers are not evidence of an adverse action that would deter a person of ordinary firmness from engaging in protected conduct.   *Hix v. Tennessee Dep't of Corr.*, 196 Fed. App'x 350, 358 (6th Cir. 2006).   Further, a prisoner has no protected right to remain incarcerated at a particular institution.   *Id.*; *Jewell v. Leroux*, 20 Fed. App'x 375, 377-78 (6th Cir. 2001).   But as Plaintiff points out, where aggravating circumstances exist in a particular case, a prison transfer can be sufficiently adverse to support a retaliation claim.   (Docket no. 45 at 9 (citing *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005); *Pasley v. Conerly*, 345 Fed. App'x 981 (6th Cir. 2009)))); *see also Hix*, 196 Fed. App'x at 358.   In general, such a claim requires foreseeable, negative consequences. *See id.*   For example, in *Siggers-El*, "the [p]laintiff not only lost his high paying job that he needed in order to pay his attorney, but the transfer also made it more difficult for his attorney to visit with or represent him because he was moved further away from her."   *Siggers-El*, 412 F.3d at 702. And in *Pasley*, the court found it sufficient that the defendant threatened, "first, to have [the plaintiff] moved out of the unit so that he would lose his job and, second, to use her influence with a warden to have him moved to a location where his family would not be able to visit him."

19

*Pasley*, 345 Fed. App'x at 985.   Here, Plaintiff alleges that his transfer resulted in (1) the loss of

his high-paying job as a baker, which he used to help pay his court-related fees; (2) a transfer to a

location where his family was unable to visit him for two years; (3) a transfer to a location with

prisoner safety concerns; and (4) a transfer to a prison with a more restrictive environment.   (*See*

docket no. 45 at 9-10.)   Drawing all reasonable inferences in Plaintiff's favor, and accepting as

true his allegation that Defendant Winn promised to "ride him out" to a facility further from his

family if Plaintiff did not sign off on his grievances, the undersigned finds that such a threat of

transfer would deter a person of ordinary firmness from continuing to file grievances.

  With regard to Plaintiff's misconduct-violation claims, Defendants assert that Plaintiff's

claims fail because he was found guilty of one violation and that he pled guilty to another.

(Docket no. 42 at 25.)   Defendants are correct that a prisoner cannot prevail on a retaliation claim

that is based on false allegations in a misconduct report when the prisoner is found guilty of the

misconduct.   *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir.2005) (citing *Henderson v.

Baird*, 29 F.3d 464, 469 (8th Cir.1994)) ("[a] finding of guilt based upon some evidence of a

violation of prison rules 'essentially checkmates [a] retaliation claim.'").   Plaintiff responds by

arguing that he is not challenging the merits of the underlying misconduct violations; instead, he

asserts that the charges against him were retaliatory.   (Docket no. 45 at 6-9.)   But this is precisely

the type of claim that is barred under *Jackson* and *Henderson*.   Thus, Plaintiff's allegations

regarding his misconduct violations do not support his retaliation claims.[6]

  While the undersigned finds that Plaintiff's misconduct-violation claims cannot be used to

support his retaliation claims, such a finding is insufficient to grant Defendants' Motion to Dismiss

---

[6] This finding does not apply to Plaintiff's claim that Defendants modified his disciplinary
record after he pled guilty to the first major misconduct.

as his misconduct-violation claims are only included in his Complaint as part of his general retaliation claim.   Even without his misconduct-related allegations, viewing Plaintiff's remaining allegations as true, his retaliation claims rise above mere speculation.   Moreover, to the extent the Court considers Plaintiff's claims against each of the defendants individually, none of the Defendants is alleged to have participated only in Plaintiff's misconduct violations; Plaintiff alleges that each of the Defendants participated in at least one additional wrongful act.   Therefore, Defendants' Motion should be denied.

### 4.        Qualified Immunity

Defendants allege that they are entitled to qualified immunity for Plaintiffs' claims. (Docket no. 42 at 31-33.)   Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).   That is, "'[t]he defense of qualified immunity protects officials from individual liability for monetary damages but not from declaratory or injunctive relief.'"   *Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623, 635 n.2 (6th Cir. 2013) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001)).

The Sixth Circuit has set forth a tri-part test to determine whether a defendant is entitled to qualified immunity: whether (1) "the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred;" (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively

21

unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)).   The court may, however, take up these considerations in any order.   *See Pearson v. Callahan*, 555 U.S. 223 (2009).

"A defendant who invokes the qualified immunity defense must present facts which, if true, would entitle him to immunity."   *Noble v. Schmitt*, 87 F.3d 157, 161 (citing *Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989)).   If the defendant does so, "the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity."   *See id.*; *see also*, *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006) (citing *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir.2004)).   "The [plaintiff] will defeat a qualified immunity defense if he can produce sufficient evidence after discovery to prove the existence of genuine issues of material fact regarding the issue of immunity."   *Noble*, 87 F.3d at 161 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Defendants' Motion for qualified immunity rests on their assertions that Plaintiff "has failed to establish that his rights under the First or Eighth Amendment were violated" and that "even if Plaintiff has arguably stated a claim, Defendants . . . actions were not objectively unreasonable in light of clearly established law."   (Docket no. 42 at 31-33.)   As discussed, *supra*, viewing Plaintiff's allegations in a light most favorable to him, Plaintiff has sufficiently alleged constitutional violations under the First and Eighth Amendments.   Thus, Defendants' qualified-immunity claim turns on whether Plaintiff's rights were clearly established and, if so, whether Defendants' actions were objectively reasonable.

Although "objective legal reasonableness" is a distinct, third prong of the qualified

immunity analysis, *see Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999) (en banc), Defendants address the reasonableness of their actions in connection with whether the law in this area is clearly established (*see* docket no. 42 at 32-33).   Defendants assert that their actions, "such as requesting [Plaintiff] to sign off on grievance investigations, searching his cell for stolen library items, not being paid at a given rate for working in the kitchen, as well as the remaining incidents of prison life . . . did not violate clearly established law."   (*Id.* at 33.)   But Defendants' argument misses the mark.   Plaintiff's Eighth Amendment right to sanitary living conditions and personal hygiene products as well as his First Amendment right to be free from retaliation for filing grievances are both clearly established.   And while the objective reasonableness of Defendants' conduct may be a question of fact, Plaintiff need not produce any evidence to defeat such a defense until after discovery has concluded.   *See Noble*, 87 F.3d at 161.   Therefore, Defendants' Motion should be denied without prejudice.

> **D.     Conclusion**

For the reasons stated above, the undersigned recommends granting in part and denying in part Defendants' Motion to Dismiss [42].   The Court should dismiss Plaintiff's claims against Defendant Funston.   Defendants' Motion should be denied with regard to the remaining defendants and claims.

## III.     Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.   Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.   The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:   March 23, 2015              s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on counsel of record and on Plaintiff Jermaine Hunter on this date.

Dated:   March 23, 2015              s/ Lisa C. Bartlett
                                     Case Manager

24